UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

Case No: _____

ALLAN MACHADO,

     Plaintiff,

v.

HOME DEPOT U.S.A., INC

     Defendant

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, ALLAN MACHADO, by and through his undersigned counsel, sues the Defendant, HOME DEPOT U.S.A., INC., and alleges as follows:

## JURISDICTION AND VENUE

1.    This is an action for damages and to remedy violations of the rights of MR. ALLAN MACHADO under the Americans with Disabilities Act of 1990, as amended, including the ADA Amendment Act of 2008, the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601, et seq., and the Florida Civil Rights Act of 1992, as amended ("Chapter 760"), to redress injuries done to him by the Defendant, HOME DEPOT U.S.A., INC. ("Defendant").

2.    The unlawful acts which gave rise to this Complaint occurred within Miami-Dade County, Florida during the Plaintiff's employment with Defendant, making venue proper in this District pursuant to 28 U.S.C. § 1391.

## PARTIES

3.      At all times material hereto, Plaintiff has been a citizen and resident of Miami-Dade County Florida and is otherwise *sui juris*.

4.      At all times material hereto, Plaintiff was an individual with a disability and, as such, Plaintiff is a member of a protected class under the Americans with Disabilities Act of 1990, as amended, including the ADA Amendment Act of 2008, and the Florida Civil Rights of 1992, because the terms, conditions, and privileges of his employment were altered because of his disability and request for FMLA.

5.      Defendant is not a government agency. At all times material hereto, Defendant was Plaintiff's employer as defined by law.

6.      Defendant has, at all times material hereto, employed 20 or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year in accordance with the FCRA (42 U.S.C. §2000e(b); Fla. Stat. § 760.02(7)).

7.      At all times material hereto, Defendant was a covered employer within the meaning and contemplation of the FMLA, 29 U.S.C. §2611(4)(A), in that they employed more than 50 employees in 20 or more workweeks in each calendar year.

8.      Plaintiff has exhausted his administrative remedies by filing a timely charge of discrimination against the Defendant with the Equal Employment Opportunity Commission.

9.      Plaintiff's charge was filed within 300 days after the first instance of discrimination occurred.

10.      Plaintiff was issued Notices of Right to Sue on May 13, 2019. This suit is filed in accordance with that Notice and within the applicable ninety (90) day time limitation (a copy of the Notice is attached hereto as Exhibit A).

11. The Florida Commission on Human Relations did not issue a finding on Plaintiff's charge within 180 days of the filing of said charges.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

12. Plaintiff was hired as a regular store associate for the Defendant in October 2001. Within two years, the Plaintiff was promoted to department supervisor. In 2008, he was promoted again to assistant store manager for night operations. In 2011, the Plaintiff was moved to assistant store manager for the day shift until he was terminated on or about July 7, 2018.

13. As an assistant store manager, Plaintiff's primary duties and responsibilities included serving as the primary leader in achieving sales goals and service standards across the Merchandising Departments

14. Plaintiff was qualified for his position as an assistant store manager in that he had experience as an assistant store manager and/or he had all necessary training to perform his job duties and responsibilities.

15. Plaintiff's salary was 65,856.00 not including bonuses.

16. In August 2013, the Plaintiff was diagnosed with cancer and took a few weeks off from work.

17. In January 2014, the Plaintiff had a bone marrow transplant and was on a paid leave of absence for 3 months.

18. In late May or early June 2018, the Plaintiff's doctor informed him that he would need another bone marrow transplant at the end of 2018, so the Plaintiff informed the store manager, Jeff Bass. The Plaintiff advised Mr. Bass that he would most likely need to take a leave of absence at the end of the year for the transplant.

19.     On June 22, 2018, Mark, District Loss Prevention Manager, was at the Plaintiff's store with another loss prevention specialist. Mark and the other specialist conducted an interview of the Plaintiff regarding two incidents where Plaintiff purchased and subsequently returned items and received a refund. Plaintiff explained the details and wrote a statement and the meeting concluded.

20.     That same day, Mark and Kenya, the District Human Resources Manager, informed Plaintiff that he would be placed on a paid suspension pending further investigation.

21.     On June 26, 2018, the Plaintiff returned for a second interview with Mark, as requested by Mark.

22.     During the interview, Mark asked the Plaintiff about a transaction from April 2018 where the Plaintiff used a coupon for either $5 off or 10% off. The Plaintiff didn't remember because he had spent about $25,000.00 remodeling in over 200 purchases for supplies and materials to remodel his home that he purchased in July 2017. Mark claimed that the Plaintiff returned some of the items a few weeks later without a receipt, and received the full price back on store credit. The Plaintiff explained to him that he had made many purchases and didn't have all his receipts. For all the years that the Plaintiff had been an assistant manager, he had not known the Defendant to require a receipt. The Plaintiff asked him if he should begin questioning customers who returned items without receipts whether or not they received a discount when they purchased them? The Plaintiff also informed him that the system automatically gave the returning customer the lowest retail price for any items without a receipt.

23.     Mark also asked the Plaintiff about an umbrella that he returned to his card and the video showed that he never walked in with an umbrella. The Plaintiff explained to him that the umbrella was for an upset customer who came in to purchase one but it was not available in the

store. The customer was irate because the item was shown online but was not in the store. The customer stated that she was going to call the Defendant's corporate office to complain. The Plaintiff explained to her that he would find her an umbrella within the next few hours from another store and call her when it arrived. She was happy. It was a weekend so to do a transfer and have the other store cooperate quickly would take forever. So, the Plaintiff gave his supervisor, either Francisco Germer or Paul Falcon, his American Express and he went over to the other store for the Defendant. The Plaintiff does not remember for sure if it was Francisco Germer or Paul Falcon, but definitely one of them. He purchased it, brought it back to the store and called the customer and sold it to her. He then gave the Plaintiff his receipt so that the Plaintiff could return it back to his inventory because they did sell it to her. The cameras confirmed the story. Mark then said, "just promise me when we're done, moving forward, you're not going to forget items in the store anymore and you're going to make sure you have a receipt when you do returns." The Plaintiff said, "fine, no problem."

24.     Mark then asked Plaintiff to sign a form for payment of restitution. Plaintiff responded, "these are forms we give thieves and I'm not a thief." Mark then asked the Plaintiff to write a statement. The Plaintiff wrote a statement and the meeting concluded.

25.     On June 28, 2018, Mark texted the Plaintiff requesting yet another interview on June 29th. The Plaintiff responded that he was unable to come in that day because he had a chemotherapy treatment scheduled. The meeting was rescheduled for July 2, 2018 at 10 a.m.

26.     On July 2, 2018, Mark asked again about the tiles and the umbrella. The Plaintiff answered his questions again and provided a second written statement. Mark also claimed that the Plaintiff did a refund back on his American Express for a plant but they never saw the plant with him. The Plaintiff explained that when he came in on his shift, he had the plant in a black trash

bag in a shopping cart. The service desk and returns were very busy so the Plaintiff had put the

cart aside and began assisting the service desk and the customers first. Later, the Plaintiff was able

to do the return. They also verified that on camera.

27.     On July 6, 2018, Mr. Bass called the Plaintiff in the evening. Mr. Bass told him that

he would like to see the Plaintiff the next day at the District Office.

28.     When the Plaintiff arrived, he met with Mr. Bass and the District Manager, Warren

Cork. They sat the Plaintiff down and explained that he was being terminated for not following

company standard operating procedures. They stated that the Plaintiff needed to have merchandise

present when he was doing a return. The Plaintiff was told that he was not allowed to do returns

without a receipt and that he should have done a will-call instead of purchasing things and leaving

the items at the store. The Plaintiff was told that he had put many cashier's jobs on the line by

having them do returns for him. The Plaintiff told them that he did not steal. It is merchandise that

the Plaintiff had paid for but just did not have his receipt. The Plaintiff explained to them that he

has a clean record throughout his career with them. Others have done returns in the past without

receipts and the Defendant never had any issues with it. However, because of the Plaintiff's

disability and disclosed need for FMLA, Respondent discriminated against him and interfered with

his ability to take FMLA to which he was entitled.

29.     Throughout Plaintiff's chemotherapy treatment, the Plaintiff needed Wednesdays

off to attend his treatment appointments. Defendant was not pleased that they had to give Plaintiff

off on Wednesday as a reasonable accommodation because Defendant did advertisement setup on

Wednesdays, and that work necessitated manpower, so it was an inconvenience to Defendant.

30.     Additionally, because of the weakened state in which chemotherapy left his body,

he was unable to work a closing shift at night and then turn around and open the store the next

morning because that only left him three hours of sleep. The Plaintiff's immune system was already very weak and he had a lot of back pain. The Plaintiff also got sick and fevers often. The Defendant was aware of the Plaintiff's disability and the Plaintiff made it clear to Mr. Bass that working closing shift and then opening the next morning was virtually impossible because of his disability and Plaintiff requested a reasonable accommodation.  Despite this, the Defendant continued to schedule Plaintiff to work multiple closing shifts followed by opening shifts the next day. In fact, the Defendant scheduled the Plaintiff to work more of these close to open shifts than any of the other assistant managers or key holders. Thus, the Defendant disregarded the Plaintiff's requested accommodation due to his disability. Ultimately, the Plaintiff was fired because of his disability, request for FMLA, and retaliated against for requesting accommodations.

31.     Similarly situated individuals without disabilities were not targeted with accusations of theft.

32.     Plaintiff has engaged the undersigned attorney to prosecute his claims and is entitled to recover his attorney's fees from Defendant pursuant to statute.

## COUNT I: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990 ("ADA")
**(Discrimination on the Basis of Disability)**

33.     Plaintiff incorporates herein the allegations contained in paragraphs 1 through 32, inclusive, as though same were fully re-written here.

34.     The ADA forbids discrimination on the basis of disability; prohibiting discrimination in employment, public services, public accommodations, and telecommunications.

35.     Plaintiff has a disability as that term is defined under the ADA, and, therefore, is a member of the protected class.

36.     At all relevant and material times, Defendant failed to comply with the ADA, which states in relevant part: (1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities; (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; (3) to ensure that the Federal Government plays a central role in enforcing the standards established in this chapter on behalf of individuals with disabilities; and (4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

37.     The discrimination against Plaintiff by Defendant was caused by Defendant being aware of Plaintiff's disability.

38.     At all times relevant hereto, Defendant regarded Plaintiff as an individual with a disability and/or an individual with a record of having a disability.

39.     At the time of the unlawful discrimination, Plaintiff did perform and excel at the performance of the essential functions assigned to him by Defendant.

40.     Plaintiff was qualified for the position.

41.     Defendant is a large privately-owned business, and therefore a sophisticated employer who has actual knowledge of the requirements of the ADA, as amended.

42.     The failure of Defendant to adhere to the mandates of the ADA was willful and its violations of the provisions of the ADA were willful.

43.     The Defendant's failure to accommodate the Plaintiff thus failing to engage in the interactive process, demonstrates the Defendant's lack of adherence to its policy against discrimination and failure to comply with the law on disabilities and reasonable accommodations.

When the Defendant required the Plaintiff to close and open the store the next day despite being aware of the Plaintiff's disability, it discriminated against him in violation of the ADA. Further, the Defendant targeted Plaintiff by accusing him of stealing because of his disability and request for an accommodation.

44.     Any allegedly nondiscriminatory reason for the Defendant's failure to reasonably accommodate Plaintiff is a mere pretext for the actual reasons for the failure to reasonably accommodate Plaintiff; *inter alia* Plaintiff's disability.

45.      As a result of Defendant's violation, Plaintiff has suffered damages.

46.     As a direct and proximate result of the intentional and discriminatory acts and practices of the Defendant, and/or its employees, Plaintiff suffered injury and continues to suffer injury including past and future loss of income and other employment benefits, emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, damage to his reputation, and other past and future pecuniary losses.

WHEREFORE, Plaintiff hereby requests this Court enter judgment against Defendant for all wages and benefits the Plaintiff would have received but for the discrimination, including actual damages suffered, loss of fringe benefits, loss of retirement benefits, compensatory damages under the ADA for emotional distress, liquidated damages, prejudgment interest on his damages award, attorney's fees, costs, and such other and further relief as this Court deems just and appropriate.

### COUNT II: VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992
**(Discrimination on the Basis of Disability)**

47.     Plaintiff incorporates herein the allegations contained in paragraphs 1 through 32, inclusive, as though same were fully re-written here, and says:

48.     The FCRA forbids discrimination on the basis of race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status and thereby to protect their interest in

personal dignity, to make available to the state their full productive capacities, to secure the state against domestic strife and unrest, to preserve the public safety, health, and general welfare, and to promote the interests, rights, and privileges of individuals within the state.

49.     Plaintiff has a disability as that term is defined in the FCRA, and therefore, is a member of a protected class.

50.     At all relevant and material times, Defendant failed to comply with the FCRA.

51.     Defendant's discrimination of Plaintiff was caused by Defendant being aware of Plaintiff's disability.

52.     At all times relevant hereto, Defendant regarded Plaintiff as an individual with a disability and/or an individual with a record of having a disability.

53.     At the time of the unlawful discrimination, Plaintiff did perform and excel at the performance of the essential functions assigned to him by Defendant.

54.     The failure of Defendant to adhere to the mandates of the FCRA was willful and its violations of the provisions of the FCRA were willful.

55.     Defendant, through its practices and policies as an employer, willfully, and with malicious or reckless disregard of Plaintiff's protected rights, discriminated against Plaintiff on account of his disability in violation of the FCRA.

56.     The Defendant's failure to accommodate the Plaintiff thus failing to engage in the interactive process, demonstrates the Defendant's lack of adherence to its policy against discrimination and failure to comply with the law on disabilities and reasonable accommodations. When the Defendant required the Plaintiff to close and open the store the next day despite being aware of the Plaintiff's disability, it discriminated against him in violation of the ADA. Further,

the Defendant targeted Plaintiff by accusing him of stealing because of his disability and request for an accommodation.

57.     Any allegedly nondiscriminatory reason for the Defendant's failure to reasonably accommodate Plaintiff is a mere pretext for the actual reasons for the failure to reasonably accommodate Plaintiff; *inter alia* Plaintiff's disability.

58.     Defendant's actions were malicious and were recklessly indifferent to Plaintiff's rights protecting persons from discrimination due to his disability. The discrimination on the basis of disability constitutes unlawful discrimination.

59.     As a result of Defendant's violation, Plaintiff has suffered damages.

60.     As a direct and proximate result of the intentional and discriminatory acts and practices of the Defendant, and/or its employees, Plaintiff suffered injury and continues to suffer injury including past and future loss of income and other employment benefits, emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, damage to his reputation, and other past and future pecuniary losses.

WHEREFORE, Plaintiff hereby requests this Court enter judgment against Defendant for all wages and benefits the Plaintiff would have received but for the discrimination, including actual damages suffered, compensatory damages under the FCRA for emotional distress, liquidated damages, punitive damages, prejudgment interest on his damages award, attorney's fees, costs, and such other and further relief as this Court deems just and appropriate.

## COUNT III: FMLA INTERFERENCE

61.     Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 32 as if fully set forth herein.

62.     Plaintiff had the right to request FMLA at the end of 2018 due to the Plaintiff needing another bone marrow transplant.

63.     Under the FMLA, Plaintiff had the right to be restored to his former position or its equivalent upon his return to work. However, the Defendant fired the Plaintiff before he even got a chance to take the requested leave.

64.     When Defendant terminated Plaintiff, they interfered with Plaintiff's right to his position, or its equivalent, and thus violated the FMLA.

65.     As a direct result of his termination, Plaintiff has suffered, and will continue to suffer, a loss of wages, employment benefits, and other compensation denied or lost to him by reason of Defendant's violation. Defendant's conduct was not done in good faith, and Plaintiff is therefore entitled to liquidated damages in an amount equal to his loss of wages salary, employment benefits, and other compensation.

66.     Plaintiff is entitled to an award of his reasonable attorney's fees and costs incurred in this action pursuant to 29 U.S.C. §2617(a)(3).

WHEREFORE, Plaintiff hereby requests judgment in his favor and against Defendant for (a) damages for lost wages, employment benefits, and any other compensation denied or lost to Plaintiff by reason of Defendant's violation of the FMLA, plus interest on such sum, pursuant to 29 U.S.C. § 2617(a)(1)(A)(i) and (ii);  (b) liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii); (c) equitable relief as this Court deems appropriate pursuant to 29 U.S.C. § 2617(a)(1)(B); (d) Plaintiff's costs, expert witness fees, and attorney's fees pursuant to 29 U.S.C. § 2617(a)(3); and (e) such other and further relief as this Court deems just and proper.

## COUNT IV: FMLA RETALIATION

67.     Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 32 as if fully set forth herein.

68.     Plaintiff had the right to request FMLA at the end of 2018 due to the Plaintiff needing another bone marrow transplant.

69.     Under the FMLA, Plaintiff had the right to be restored to his former position or its equivalent upon his return to work.

70.     The Defendant fired the Plaintiff before he even got a chance to take the requested leave.

71.     Plaintiff's termination constituted an adverse employment action.

72.     Plaintiff's action in requesting his FMLA leave was "protected activity" under the FMLA.

73.     Plaintiff's upcoming FMLA leave was, at a minimum, a motivating factor in Defendant's decision to terminate Plaintiff's employment.

74.     Defendant's purported reason(s), if any, for terminating Plaintiff's employment are pretextual.

75.     As a direct result of his termination, Plaintiff has suffered, and will continue to suffer a loss of wages, employment benefits, and other compensation denied or lost to his by reason of Defendant's violation. Defendant's conduct was not done in good faith, and Plaintiff is therefore entitled to liquidated damages in an amount equal to his loss of wages salary, employment benefits, and other compensation.

76.     Plaintiff is entitled to an award of his reasonable attorney's fees and costs incurred in this action pursuant to 29 U.S.C. §2617(a)(3).

WHEREFORE, Plaintiff, hereby requests judgment in his favor and against Defendant for (a) damages for lost wages, employment benefits, and any other compensation denied or lost to

Plaintiff by reason of Defendant's violation of the FMLA, plus interest on such sum, pursuant to 29 U.S.C. § 2617(a)(1)(A)(i) and (ii); (b) liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii); (c) equitable relief as this Court deems appropriate pursuant to 29 U.S.C. § 2617(a)(1)(B); (d) Plaintiff's costs, expert witness fees, and attorney's fees, pursuant to 29 U.S.C. § 2617(a)(3); € and such other and further relief as this Court deems just and proper.

## COUNT V: VIOLATION OF ADA
### (Retaliation)

77.     Plaintiff incorporates herein the allegations contained in paragraphs 1 through 32, inclusive, as though same were fully re-written here.

78.     Plaintiff suffered from a disability as that term is defined under the ADA.

79.     At all times relevant hereto, Defendant regarded Plaintiff as an individual with a disability and/or an individual with a record of having a disability.

80.     Defendant is an employer as that term is defined under the ADA.

81.     Defendant retaliated against Plaintiff for engaging in the protected activity of requesting a reasonable accommodation against him by *inter alia*, failing to provide the Plaintiff with a reasonable accommodation, accusing him of stealing, and finally terminating the Plaintiff's employment.

82.     As a result of Defendant's violation, Plaintiff has suffered damages.

83.     As a direct and proximate result of the intentional and discriminatory acts and practices of the Defendant, and/or its employees, Plaintiff suffered injury and continues to suffer injury including past and future loss of income and other employment benefits, emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, damage to his reputation, and other past and future pecuniary losses.

WHEREFORE, Plaintiff hereby requests that this Court enter judgment in his favor against the Defendant by awarding general and compensatory damages and reinstatement, front pay and back pay, prejudgment interest, attorneys' fees and costs, and such other and further relief as this Court deems just and appropriate.

### COUNT VI: VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992
### (Retaliation)

84.     Plaintiff incorporates herein the allegations contained in paragraphs 1 through 32, inclusive, as though same were fully re-written here.

85.     Plaintiff had the right to request a reasonable accommodation due to his disability.

86.     Plaintiff had the right to voice his concerns regarding the treatment he received.

87.     Plaintiff had the right to voice his concerns regarding the Defendant's accusations of theft for no other reason other than his disability.

88.     When Defendant accused the Plaintiff of stealing and finally terminated him, it retaliated against his for exercising his rights.

89.     Mr. Bass and Mr. Cork, at all times relevant, were acting within the course and scope of their employment for Defendant.

90.     Plaintiff is entitled to such affirmative relief as may be appropriate, including, but not limited to, lost wages, benefits, and compensation for emotional distress, pursuant to the provisions of the FCRA, Chapter 760.

91.     Upon information and belief, Defendant's unlawful employment practices were done with malice or with reckless indifference to the protected rights of Plaintiff. Defendant, by and through its officers, and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct of those in direct contact with Plaintiff. Therefore, Plaintiff is also entitled to punitive damages from Defendant in a sum to be determined at trial.

92.     Plaintiff has engaged the undersigned attorney to prosecute his claim and is entitled to recover his attorney's fees from Defendant pursuant to statute.

WHEREFORE, Plaintiff hereby requests that this Court: (a) declare that Defendant's termination of Plaintiff was in violation of the FCRA; (b) grant Plaintiff judgment against Defendant to compensate him for past and future pecuniary losses, including injury to his professional reputation, and emotional pain and suffering caused by Defendant in an amount to be determined at trial and in accordance with the FCRA; (c) award Plaintiff pre-judgment and post-judgment interest; (d) award Plaintiff punitive and compensatory damages as permitted by law; (e) award Plaintiff the costs of this action, together with his reasonable attorneys' fees incurred herein, pursuant to contract and/or statute; and (f) grant Plaintiff such other and further relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

 Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this 1st day of June, 2020.

By:  /s/ *Michelle Cohen Levy*
Michelle Cohen Levy, FBN 0068514
The Law Office of Michelle Cohen Levy, P.A.
4400 N. Federal Highway
Lighthouse Point, Florida 33064
P: (954) 651-9196
Michelle@CohenLevyLegal.com
Counsel for Plaintiff